IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DARLENE GASKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-4076 |
| ) | |
| DEPARTMENT OF THE ARMY by ) | |
| JOHN M. McHUGH, ) | |
| SECRETARY OF THE ARMY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff alleges that while working as a Supervisory Clinical Nurse ("SCN") at Irwin Army Hospital, Fort Riley, Kansas, she was subjected to disparate treatment and terminated from that position because of her race and gender in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Plaintiff also alleges that she was not selected for a Case Manager position or an Assistant Head Nurse position, both at the Irwin Army Hospital, because of her race.

Defendant moves for summary judgment in its favor on all of plaintiff's claims. In her opposition, plaintiff withdraws her nonselection claim and constructively withdraws her discriminatory termination claim. Plaintiff also fails to come forward with evidence that the adverse employment action occurred under circumstances giving rise to an interference of discrimination. Accordingly, the court grants defendant's motion.

**I.      Factual Background**

Plaintiff, a female of African descent, applied for and was appointed to the position of SCN at Irwin Army Hospital at Fort Riley, Kansas, in November 2007. Lieutenant Colonel ("LTC") Groves,

-1-

a Caucasian male, was the Officer and Supervisor responsible for selecting plaintiff for the SCN position. In connection with her appointment, plaintiff began serving a one year probationary period on or about November 11, 2007. LTC Groves was plaintiff's first line supervisor.

In January 2008, in response to numerous complaints, LTC Groves instructed Chaplain Diana Crane to conduct a sensing session.[1] After conducting two sensing sessions, Chaplain Crane reported to LTC Groves that she had received negative feedback from the majority of the nursing staff regarding the entire leadership team and, in particular, plaintiff's performance and conduct as a supervisor.

In February 2008, after plaintiff's return from a training course, LTC Groves met with plaintiff to discuss the concerns raised by the nursing staff during the sensing sessions including the nursing staff's perception that plaintiff was rude. LTC Groves also met with the entire leadership team, of which plaintiff was a member, to discuss the concerns raised during the sensing session.

On March 13, 2008, LTC Groves issued to plaintiff a Notice of Termination of Appointment During Supervisory Probationary Period, which terminated her appointment as SCN effective March 14, 2008. The notice stated that plaintiff's appointment was terminated because her management and leadership ability did not meet LTC Grove's expectations and because she had "displayed ineffective communication with [her] . . . staff as well as displayed unprofessional interactions between leadership and staff." (Doc. 48 at 12.) Starting March 14, 2008, plaintiff worked as a nonsupervisory nurse in the Emergency Medical Services department.

**II.     Analysis**

       **A. Characterization Of Plaintiff's Claims**

---

[1]     A sensing session is a meeting in which employees are encouraged to speak freely about any issue or concern they may have about their work environment.

As an initial matter, the parties dispute the correct characterization of plaintiff's claims. Defendant argues that plaintiff is alleging three distinct claims: (1) disparate treatment during the four months she worked as an SCN at Irwin Army Hospital, (2) discriminatory demotion from the SCN position,[2] and (3) nonselection for the Case Manager or Assistant Head Nurse positions. To support this characterization, defendant argues that the pretrial order list three theories of recovery.

Plaintiff responds that she is formally withdrawing her nonselection claim. She also clarifies that "this case should be analyze[d] only in the context of a disparate treatment case," and that the adverse employment action is her demotion. (Doc. 56 at 17–18.) Based on this statement, the court determines that plaintiff is withdrawing her discriminatory demotion claim. And plaintiff comes forward with no evidence in support of either claim in response to defendant's motion. Therefore, the court grants summary judgment in defendant's favor on both claims. Plaintiff's only remaining claim is for disparate treatment.

### B. Defendant Is Entitled To Summary Judgment On Plaintiff's Disparate Treatment Claim

The court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to analyze plaintiff's remaining claim. Under this analysis, plaintiff has the initial burden to establish a *prima facie* case of discrimination. *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (discussing *McDonnell Douglas*). Once plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Texas Dep't of Cmty Affairs*, 450 U.S. at 252–53. If defendant does so, the burden shifts back to plaintiff to show that there is a genuine issue of material fact as to whether defendant's proffered reasons are pretextual. *Id.*

---

[2] The parties use "demotion" and "termination" interchangeably.

Defendant argues that plaintiff lacks evidence of a *prima facie* disparate treatment claim. Defendant further argues that, even assuming she establishes a *prima facie* case, plaintiff lacks evidence that defendant's stated basis for terminating plaintiff is a pretext for discrimination.[3]

### 1. Plaintiff Fails To Produce Evidence Of A *Prima Facie* Case

To establish a *prima facie* case of disparate treatment, plaintiff must present evidence that "(1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). Defendant argues that plaintiff lacks evidence of the second and third element. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (explaining that a movant may satisfy its summary judgment burden by pointing out a lack of evidence for the other party on an essential element of the nonmoving party's claim).

#### a. Plaintiff Has Evidence Of An Adverse Employment Action

Plaintiff argues that the adverse employment action is her demotion from the SCN position. An adverse employment action "includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal citation and quotation omitted). The court agrees. Plaintiff was terminated from her SCN position and was reassigned as a nurse with nonsupervisory responsibilities in the Emergency Room Department. These actions constitute an adverse employment action.

#### b. Plaintiff Lacks Evidence That The Adverse Employment Action Occurred Under Circumstances Giving Rise To An Inference Of Discrimination

---

[3] Because of the different characterization of plaintiff's claim, defendant did not specifically raise pretext for the disparate treatment claim. Defendant did raise the argument for the discriminatory demotion claim. Plaintiff's opposition, however, fully responds to defendant's pretext arguments in opposing summary judgment on the disparate treatment claim. So the court determines that plaintiff knew that pretext was a challenged issue for the disparate treatment claim.

Plaintiff argues that she satisfies the third element because defendant treated similarly situated individuals more favorably. *See Luster*, 667 F.3d at 1095 ("One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably."). Specifically, plaintiff argues that MAJ Amber Pocrnich is a Caucasian female that defendant treated more favorably.

But MAJ Porcnich is not a similarly situated individual. A similarly situated individual is one who "deal[s] with the same supervisor and [is] subject to the same standards governing performance evaluation and discipline." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007). Plaintiff was a probationary employee. There is no evidence that MAJ Porcnich held probationary status. *See Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005); *Hernandez v. Potter*, 371 F. App'x 896, 900 (10th Cir. 2010) (determining employee was not a comparator because "[t]here is no evidence the employee was on probation when the key was lost"); *Been v. N.M. Dep't of Info. Tech.*, 815 F. Supp. 2d 1222, 1236 (D.N.M. 2011) (same). Plaintiff was a civilian employee. MAJ Porcnich was active military. There is no evidence that civilian and military employees were subject to the same performance and disciplinary standards. Plaintiff was a SCN. MAJ Porcnich was a head nurse. Apart from vague statements that plaintiff and MAJ Porcnich were "peers," that both women were "kind of in the . . . same boat," and that plaintiff would seek guidance from MAJ Porcnich, there is no specific evidence indicating that these women had similar job responsibilities.[4]

Even assuming that MAJ Porcnich was a similarly situated individual, plaintiff fails to present facts demonstrating that MAJ Porcnich engaged in conduct of comparable seriousness. *EEOC v. PVNF, LLC*, 487 F.3d 790, 801 (10th Cir. 2007) ("Individuals are considered 'similarly-situated' when they . . . have engaged in conduct of 'comparable seriousness.'") The court recognizes that

---

[4] The court notes that plaintiff explains that the head nurse leadership training course she attended was not "directly related to the SCN position." (Doc. 56 at 8.)

MAJ Porcnich's employees "would complain[] about her being rude" and that LTC Groves had a meeting with her employees to talk about her leadership and management. But there are no facts regarding the extent of the complaints, the comments made at the meeting, or the timeframe when the complaints were received. *See Timmerman*, 483 F.3d at 1120–21 (holding that plaintiff did not produce evidence that the individual's violation was comparable to his).

Plaintiff additionally argues that several other facts establish an inference of discrimination. These facts include (1) LTC Groves agreeing when another employee suggested that LTC Groves would be "good" in a lawsuit because he "just hired a black female," (2) LTC Groves referring to plaintiff as "hey you," (3) LTC Groves not giving her job expectancies when she was hired, (4) LTC Groves extending the contract of a nurse that plaintiff recommended he fire and that had previously yelled at plaintiff, and (5) LTC Groves confronting plaintiff about discrepancies in her time card. But none of these facts give rise to an inference of intent to discriminate based on race or gender.

### 2. Plaintiff Fails To Produce Evidence Of Pretext

Assuming *arguendo* that plaintiff established a *prima face* case, defendant argues summary judgment is appropriate because plaintiff fails to come forward with evidence that defendant's stated reason for plaintiff's demotion is pretextual. The court agrees. Defendant provides evidence that plaintiff was demoted from the SCN position because plaintiff was not adequately performing her supervisory duties. The court determines that this is a legitimate, nondiscriminatory reason for plaintiff's demotion. *McDonnell Douglas*, 411 U.S. at 802 (1973). Therefore, the burden shifts back to plaintiff to come forward with evidence that defendant's articulated bases for her demotion are pretextual.

Plaintiff attempts to make this showing by relying on much of the same evidence discussed above. But, for the same reasons, this evidence does not establish pretext. Specifically, plaintiff fails to produce evidence that MAJ Porcnich is a similarly situated employee that engaged in conduct of

comparable seriousness, and plaintiff's other facts are not connected to her demotion and do not cast doubt on defendant's stated reason. In addition, LTC Groves both promoted and demoted plaintiff. This fact entitles defendant to a "strong inference that the employer's stated reason for acting against the employee is not pretextual." *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (internal citations omitted). And plaintiff does not dispute that LTC Groves received complaints about her as a supervisor.[5] Accordingly, plaintiff fails to come forward with evidence of pretext.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is granted.

Dated this 9th day of August, 2012, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
United States District Judge

---

[5] Plaintiff disputes how LTC Groves conveyed those comments to her, but she does not dispute that he received complaints.

-7-